IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BARBARA G. OTTERSON,

    Plaintiff,

vs.

Case No. 03-1410-JTM

JO ANNE BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.

MEMORANDUM AND ORDER

    Plaintiff Barbara G. Otterson has applied for disability insurance and supplemental security income benefits. Her application was denied by the ALJ on April 30, 2003, a decision affirmed by the Appeals Council on September 25, 2003. There are three allegations of error by Otterson. First, that the ALJ violated Social Security Ruling 96-8p by not considering the effect of her severe impairments in determining her RFC. Second, that the ALJ improperly discounted the opinion of her treating physician, Dr. Cheryl Madison. Third, that the ALJ erred in failing to find that Otterson's back pain was a non-severe mental impairment.

    Plaintiff-claimant was born on August 1, 1964. She has worked in the past as a home health attendant, a janitor, a dry cleaning attendant, a housekeeper, a convenience store cashier, and a daycare provider. Otterson has stated that she became disabled since October 13, 2001, due to congestive heart failure with ejection fraction of 24 percent in the left ventricle. She has stated that she stopped working because of extreme stress and extreme difficulty breathing.

The ALJ concluded that Otterson was severely impaired because of cardiomyopathy with obesity, and that she could not perform her past work. However, she was not disabled because she could perform other work that existed in significant numbers in the national economy. The detailed facts are set forth independently in the ALJ's opinion (Tr. 17-33) and the brief of Otterson (Dkt. No. 6, at 4-10) and mentioned seriatim in the argument section of the Commissioner's response (Dkt. No. 9, at 4-10).

Otterson argues that the ALJ's opinion violates Social Security Ruling 96-8p since the ALJ allegedly failed to follow the procedure set forth in that rule for determining a claimant's RFC. Otterson faults the opinion for failing to include a narrative as to how the RFC was determined, linked to the medical evidence, and suggests that the ALJ's findings were based on a cursory statement that there was "inconsistent" medical testimony.

Social Security Ruling 96-8p provides the means by which the Commissioner is to determine the RFC of a claimant. The Commissioner first sets out a narrative discussion of how evidence supports each conclusion, citing both medical and non-medical evidence. The Commissioner must then assess the claimant's ability to perform regular and sustained work, and describe the maximum amount of each activity the person can perform. Finally, the Commissioner should identify and explain any important inconsistency or ambiguity in the evidence.

The ALJ's opinion here is consistent with Ruling 96-8p. The ALJ explains his conclusions and links these to the evidence in the record. The inconsistency noted by the ALJ (which is discussed further below) is not a mere conclusion thrown out by the ALJ, but is explained in his opinion (Tr. 21), and is linked to evidentiary exhibits in the record.

Dr. Madison gave her medical opinion as to Otterson's physical limitations through two Medical Source Statements (October 22, 2002 and February 20, 2003). She wrote that Otterson could lift or carry fifteen pounds frequently and twenty pounds occasionally; stand and/or walk continuously

less than one hour, one hour total during an eight-hour workday; sit continuously two hours, four hours total during an eight-hour workday; limited in pushing and pulling to no more than fifteen to thirty minutes at a time; never climb; occasional balancing, stooping, kneeling, crouching, crawling and handling; avoid any exposure to extreme cold and heat, weather, wetness, humidity, dust, fumes, vibration, hazards and heights. Dr. Madison also wrote that Otterson could have a decrease in concentration, persistence or pace due to occasional narcotic use for pain.

Did the ALJ err in discounting the opinion of Dr. Madison? Under Social Security Ruling 96-2p, the ALJ must articulate "reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." But the opinion of the treating physician will not control if it is an unsupported conclusion or if it is inconsistent with other medical evidence. *Castellano v. Secretary of HHS*, 26 F.3d 1027 (10th Cir. 1994). In determining the weight to give the opinion of a treating physician, the ALJ must look at

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *quoting Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted);

Here the ALJ correctly noted the inconsistency in Dr. Madison's opinion (that Otterson could stand for an hour and sit for four) failed to account for three hours out of an eight-hour workday. The remaining time is unaccounted for since Dr. Madison expressly indicated it was "[u]nknown" whether

Otterson would have to lie down or recline to alleviate her pain. (Tr. 265). The ALJ also correctly noted that there was an inconsistency between Dr. Madison's general opinion, and the actual day-to-day activities of the claimant. Otterson was able to care for herself, her home, and her children, including her four year-old son; she read and watched television and movies; drove, shopped and paid bills; visited with friends and spoke on the telephone; cooked three meals seven days a week; and spent 35 to 36 hours per week doing household chores such as vacuuming, mopping, dusting, dishes, and laundry. Given these inconsistencies, the more recent diagnosis by Dr. Madison indicating that Otterson's back pain had substantially improved, and the medical evidence from Dr. Trotter that Otterson could perform sedentary work, the ALJ did not err in discounting the general conclusions of Dr. Madison in reaching his findings set forth in the ALJ opinion.

Finally, Otterson alleges that the ALJ erred at Step 2 of the five-step sequential evaluation process of 20 C.F.R. § 404.1520 — determining whether the claimant has a medically severe impairment or combination of impairments. Under *Bowen v. Yuckert*, ***107 S.Ct. 2287 (1987), an impairment should be deemed not severe only if it is a "slight abnormality" which has such a minimal effect on the claimant, such that it would not be expected to interfere with her ability to work, irrespective of age, education, or work experience.

Otterson has stated that she has pain in the middle of her shoulder blades that she would rate a nine on a bad day; on a good day, she said it is just a little bit aggravating. (Tr. 38). She also has a sharp pain, which she rates as between five and ten, in her lower back that sometimes travels into her left arm. In late 2002 and early 2003, Dr. Madison diagnosed Otterson as suffering from low back pain and pain between the shoulder blades.

Substantial evidence supports the ALJ's determination that Otterson's back and shoulder condition was not disabling. The ALJ specifically determined that Otterson's daily activities were

4

inconsistent with her subjective reports of pain. (Tr. 19, 21). Otterson reported relief from the pain after only one month of physical therapy, and indicated at the hearing she sometimes took only over-the-counter Tylenol for her pain. Dr. Madison indicated on February 4, 2003, that Otterson's low back pain had resolved (Tr. 283). The ALJ could and did appropriately determine that any limitation from the back and shoulder pain was not severe, and could be accounted for by restricting her RFC to a range of sedentary work.

IT IS ACCORDINGLY ORDERED this 23rd day of March, 2005, that the appeal of the plaintiff is hereby denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE